# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) ) ) | Crim. Action No. 15-0096 (1) (ABJ) |
| LAMONT DELRICO ROBERTS, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

On November 18, 2016, defendant Lamont Delrico Roberts was sentenced to seventy-two months of incarceration after his plea of guilty to unlawful distribution of twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). *See* J. in a Criminal Case [Dkt. # 49] ("J & C"). He now seeks to vacate that sentence pursuant to 28 U.S.C. § 2255. Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Dkt. # 52] ("Def.'s Mot."). Roberts argues that the Court's calculation of the sentencing guidelines was incorrect, and that his counsel was ineffective because: he "failed to fight and argue the reasonableness of [the] sentence;" he failed to advise Roberts of his right to a direct appeal; and he failed to argue that the Court's sentence would cause an unwarranted disparity as to his co-defendant. *Id.* at 4. Because defendant's argument about the sentencing guidelines is foreclosed by his plea agreement and incorrect in any event, and because he has not demonstrated that his representation was constitutionally deficient, the Court will deny the motion without a hearing.

## BACKGROUND

Beginning in the summer of 2014, defendant sold cocaine base on multiple occasions to an undercover Metropolitan Police Department officer. Statement of Offense [Dkt. # 37] at 1. On

May 5, 2015, he was charged with ten counts of unlawful distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Superseding Indictment [Dkt. # 4] ("Indictment").

Defendant ultimately agreed to plead guilty to Count Nine of the Indictment, which charged him and his co-defendant Randy Jarell Johnson with one count of unlawful distribution of cocaine base.[1] Indictment at 4. As part of his plea agreement, defendant acknowledged that he was pleading guilty to an offense that carried a mandatory maximum sentence of five years of incarceration. Plea Agreement [Dkt. # 36] at 1. At the time of his plea, he agreed that his estimated sentencing guidelines range would be between 87 to 108 months, and that a sentence within that range would be reasonable. *Id.* ¶¶ 3–4.

The Court accepted defendant's guilty plea on August 8, 2016. *See* Tr. of Plea Hr'g [Dkt. # 61] ("Plea Hr'g") at 24:3–9. On November 18, 2016, the Court sentenced defendant to seventy-two months of incarceration, followed by forty-eight months of supervised release. *See* J & C at 2–3. Defendant did not file a direct appeal.

On March 7, 2017, defendant filed this motion under 28 U.S.C. § 2255, challenging his sentence and claiming that he received ineffective assistance of counsel. Def.'s Mot. Mr. Roberts also sent a letter to the Court that was docketed as part of these proceedings on April 13, 2017. Letter to the Court [Dkt. # 56]. The government then opposed the motion. Opp. to Def.'s Mot. [Dkt. # 58]. Defendant did not file a reply, but he did send two more letters to the Court, which were docketed on June 8 and July 18, 2017. Letter [Dkt. # 65]; Letter [Dkt. # 67].

---

1  Johnson agreed to plead guilty to count one of a Superseding Information which charged him with unlawful distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement [Dkt. # 16] at 1; Superseding Information [Dkt. # 13]. The Court sentenced Johnson to forty-eight months of supervised release, and as a condition of his release, he was require to serve fifty consecutive weekends in jail. Johnson Sentencing Hr'g [Dkt. # 60] at 20:24, 22:6.

# STANDARD OF REVIEW

To prevail on a motion to vacate a sentence under 28 U.S.C. § 2255, a defendant must show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The defendant bears the burden of proving his claims by a preponderance of the evidence. *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973). "Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *United States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011). So in a section 2255 proceeding, the defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). And "[t]o have a plea set aside on a section 2255 petition, the petitioner 'must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001), quoting *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995); *see also Hill v. United States*, 368 U.S. 424, 471 (1962).

In considering a section 2255 motion, a district court shall grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The rules governing section 2255 proceedings add that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings, Rule 4(b), 28 U.S.C. foll. § 2255. The decision to grant a hearing "is committed to the district court's discretion." *United States v. Pollard*, 959 F.2d 1011, 1030–31 (D.C. Cir. 1992). And a "district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion

is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided" over the defendant's original proceeding. *United States v. Morrison*, 98 F.3d 619, 625–26 (D.C. Cir. 1996); *see also United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005), quoting *Morrison*, 98 F.3d 619 at 625; *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992). Ultimately, the "summary denial of a § 2255 motion is appropriate . . . when the [claims do] not necessitate the consideration of any information not within the record or within the memory of the judge ruling on the motion." *Morrison*, 98 F.3d at 626.

## ANALYSIS

Defendant has attacked his conviction on two grounds. First, he contends that the Court incorrectly calculated his sentencing guidelines range, and that it consequently imposed an erroneous sentence. Def.'s Mot. at 6–7. Second, he argues that he received ineffective assistance of counsel. *See id.* at 5. Specifically, defendant claims that his lawyer failed to argue that the sentence to be imposed was unreasonable, failed to argue that his sentence would cause an unwarranted sentencing disparity between defendant and his co-defendant, and failed to advise him of his right to appeal. *Id.*

Defendant is barred from challenging the Court's calculation of his sentencing guidelines range because he waived his right to make such an attack in his plea agreement. He has also failed to allege any prejudice arising out of his allegations of ineffective assistance of counsel. Because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), defendant's motion will be denied without an evidentiary hearing.

**I.       Defendant's claim that the Court erred in calculating his sentencing guidelines range is barred by his plea agreement, and it is incorrect in any event.**

Defendant argues that his "sentence of 72 months was unreasonable" because the Court "raised my level 2 points for a crime I was later found not guilty of," and he submits that his base

offense level "should have been level 24 with a guideline range of 51 to 63 months." Def.'s Mot. at 5.

Defendant's challenge to the sentence imposed by the Court is foreclosed by his plea agreement. Defendant agreed in his plea that he was waiving the right to file a motion under section 2255 except under limited circumstances:

> Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel in entering this Agreement or in connection with sentencing.

Plea Agreement at 6. And defendant confirmed during the plea hearing that he understood that he was waiving those rights:

> THE COURT: [D]o you also understand that sometimes after people have been convicted of an offense they attack their conviction in a separate legal proceeding under Federal Rule of Civil Procedure 60(b) or a section of the U.S. Code called 28 U.S.C. § 2255. Basically they come back in and they say my conviction was illegal for various reasons. Do you understand that you're giving up the right to do that, too, unless there's newly discovered evidence or evidence that shows your counsel was ineffective in entering this agreement or at sentencing? Do you understand that?
>
> THE DEFENDANT: Yes ma'am.

Plea Hr'g at 10:15–25.

"Although the analogy may not hold in all respects, plea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). Here, the Court will enforce the agreement, which was knowing, intelligent, and voluntary. *See United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015) (enforcing the waiver of a defendant's right to appeal when the waiver is knowing, intelligent, and voluntary), citing *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009).

5

And in any event, defendant is wrong that the Court miscalculated the applicable total offense level. The Plea Agreement stipulated that the "Guidelines Offense Level will be at least 27," and that defendant's "estimated sentencing guidelines range is 87 to 108 months." *Id.* ¶ 3. Roberts also agreed that "a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)," although he "reserve[d] the right to seek a sentence below the Estimated Guidelines Range." *Id.* ¶ 4. And, as defendant acknowledged during the plea colloquy, he was subject to a Congressionally-mandated five-year minimum sentence.

> THE COURT: [Y]ou understand that in any event, [the sentence to be imposed] can't be less than 60 months, which is five years?
>
> THE DEFENDANT: Yes.

Plea Hr'g at 19:23–25.

As part of his plea, defendant admitted that he sold a total of approximately 548.3 grams of cocaine base to an undercover officer in a series of nine controlled purchases. Statement of Offense [Dkt. # 37] at 1–2. Based on those facts, the Court calculated the applicable sentencing guidelines as follows:

- Pursuant to section 2D1.1 of the Sentencing Guidelines, the Base Offense Level for a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) involving 280 to 840 grams was 30. U.S.S.G. § 2D1.1.

- A three level reduction for acceptance of responsibility brought the offense level to 27. U.S.S.G. § 3E1.1.

- Defendant was found to have a criminal history score of 5 points (two points for a 2004 conviction for interstate transportation of stolen property arising out of his use of a financed SUV as a trade-in on another vehicle when he had failed to pay for the SUV and falsely represented that there were no outstanding liens on the vehicle; one point for a 2013 threats and destruction of property conviction; and two points for being under a criminal justice sentence at the time of the commission of the offense) which

> resulted in a Criminal History Category of III, and a recommended sentencing guideline range of 87 to 108 months. *See* U.S.S.G. §§ 4A1.1, 5A.

Roberts Sentencing Hr'g [Dkt. # 62] at 5:2–20.

The defense did not object to this calculation of the Guidelines in the Presentence Report. Indeed, this was the Guideline range that had been estimated by the parties in the Plea Agreement, Plea Agreement at 3; that the parties had agreed would be reasonable, *id.* at 4; and that was specifically discussed with the Court at the time of the plea. Plea Hr'g at 19:12–22. The Court noted at the time of the sentencing that if Roberts had fallen within Criminal History Category II instead of III, the advisory sentencing Guideline range would have been 78 to 97 months. Roberts Sentencing Hr'g at 5:16–20. And in the end, the Court ultimately sentenced defendant to a term that fell below either range: 72 months. *See id.* at 16:3; J & C at 2–3. So defendant's contention that the Court miscalculated the sentencing guidelines lacks merit, and the defendant was not prejudiced in any way by the claimed miscalculation.

## II. Defendant's ineffective assistance of counsel claim must fail because he has not shown that he was prejudiced by his counsel's alleged deficiencies.

Defendant also argues that his counsel was ineffective for three reasons. First, he claims that his attorney "failed to fight and argue the reasonableness of [his] sentence." Def.'s Mot. at 4. Second, he contends that his attorney failed to argue that the sentence to be imposed would create an unwarranted sentencing disparity among the two defendants. *Id.* Finally, he claims that his attorney never advised him of his right to file a direct appeal. *Id.*

The Sixth Amendment guarantees "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984), quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see* U.S. Const. amend. VI. A defendant asserting an ineffective assistance of counsel claim "must show (1) 'that counsel's performance was deficient,' and (2) 'that the

7

deficient performance prejudiced the defense.'" *United States v. Cassell*, 530 F.3d 1009, 1011 (D.C. Cir. 2008), quoting *Strickland*, 466 U.S. at 687; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To prove deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Knowles*, 556 U.S. at 124, quoting *Strickland*, 466 U.S. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. And "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* So "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles*, 556 U.S. at 124, quoting *Strickland*, 466 U.S. at 689.

To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Goodwin*, 607 F. Supp. 2d 47, 49 (D.D.C. 2009), quoting *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a defendant must establish that "counsel's conduct so undermined the proper functioning of the adversarial process" that the outcome cannot be relied on as just. *Id.* at 686. "Prejudice cannot result from an attorney's failure to pursue a frivolous claim." *United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001).

8

The Court will begin and end its analysis with the question of whether the alleged deficiencies prejudiced the defendant. *See, e.g.*, *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007) ("We therefore turn directly to the question of whether the defendant suffered prejudice due to his counsel's deficient performance.").

"[T]he burden of establishing prejudice falls squarely on [defendant's] shoulders." *United States v. Newman*, 805 F.3d 1143, 1147 (D.C. Cir. 2015). Here, defendant has failed to make the necessary showing of prejudice on any issue.

### A. Defendant cannot show prejudice with regard to his attorney's alleged failure to advise him that he could appeal.

There can be no prejudice stemming from any alleged failure to advise defendant of his right to appeal because defendant agreed to waive his right to file a direct appeal except under limited circumstances. Defendant's plea agreement contains the following provision:

> Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client agrees to waive the right to appeal the sentence in this case, including any term of imprisonment, fine, forfeiture, award of restitution, term of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court, in which case your client would have the right to appeal the illegal sentence or above-guidelines sentence, but not to raise on appeal other issues regarding the sentencing.

Plea Agreement at 6. Defendant acknowledged this waiver during the plea hearing:

> THE COURT: [D]o you understand that if you went to trial and you were convicted, you would have had the right to appeal your trial to the Court of Appeals and to have your lawyer help you file that appeal; you understand that?
>
> THE DEFENDANT: Yes.

9

> THE COURT: And people go to a higher court and they say, [t]hat judge made a mistake in my trial. But do you understand that by pleading guilty, you're giving up your right to appeal? The only thing you can appeal is if I sentence you illegally, to more than the statute requires, or if I apply the guidelines and depart upwards. But you don't get to go upstairs and say, [w]ell, I wasn't really guilty, that judge made a mistake. You're giving that right up. Do you understand that?
>
> THE DEFENDANT: Yes.

Plea Hr'g at 9:17–10:6. And the Court advised defendant of his right to appeal at the conclusion of the sentencing proceeding.

> THE COURT: Mr. Roberts, you have the right to appeal the sentence imposed by this Court. I believe in this case only if it exceeded the statutory maximum or the guideline range for your case, which it doesn't. But I want to tell you anyway, you have the right to appeal. If you choose to appeal, you have to file it within 14 days after the Court enters judgment. And if you're unable to afford the cost of appeal, you may request permission from the Court to file an appeal without cost to you.

Roberts Sentencing Hr'g at 18:13–21. The Court did not sentence defendant in excess of the statutory maximum, nor did it depart upward from the Guidelines, so any appeal would have been frivolous.

### B. Defendant cannot show that he was prejudiced by his attorney's performance at sentencing.

Defendant also raises two issues related to his attorney's conduct at sentencing: first, that his attorney allegedly failed to argue that the sentencing range was unreasonable, and second, that his lawyer failed to articulate that the defendant's sentence would create an unwarranted disparity as to his co-defendant. But counsel did in fact argue in a written sentencing memorandum for a sentence of no more than the mandatory minimum sixty months' incarceration, *see* Def.'s Mem. in Aid of Sentencing [Dkt. # 44] ("Mr. Lamont [Roberts] respectfully seeks a sentence of sixty (60) months, should This Honorable Court allow the factors outlined in 18 U.S.C. § 3553(a)(2) to reduce his sentence," because "[h]e is indeed a valuable member of this community"), and the

Court ended up varying from the Guidelines in a manner that benefitted the defendant notwithstanding its concerns about his history and characteristics.[2]

Finally, any argument about avoiding unwarranted sentencing disparities between the two co-defendants would have been inappropriate because the two men were not similarly situated. It is true that under 18 U.S.C. § 3553(a), the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also Gall v. United States*, 552 U.S. 38, 54 (2007). But the Supreme Court has explained that the sentencing guidelines themselves provide protection to defendants from unwarranted disparities. "[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall*, 552 U.S. at 54. In any event, the Court in this case was not faced with defendants "with similar records," and the two defendants were not "found guilty of similar conduct," so there was no unwarranted disparity in this case.

---

2   As the Court stated at sentencing:

> [O]ne thing that I cannot overlook when I look at your history and characteristics and one thing that leaps out from the presentence report in a way that I have never seen in any presentence report I've ever read when I was a prosecutor, a defense attorney, or now as a judge, is the pattern of violence towards women that . . . appears in the presentence report. It is not why you are before me, but I can't ignore it. I understand that any single incident can be misunderstood, that . . . this conviction or that conviction could be based on something that really isn't true or somebody filed a CPO and she really didn't have a good basis to. But we have multiple protective orders filed by five women. This is not an aberration, this is not a misunderstanding. This is what you call a pattern.

Roberts Sentencing Hr'g at 13:2–13:18.

Defendant Johnson entered a plea to an information charging one count of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), which did not involve a mandatory minimum penalty. Superseding Information. Johnson admitted to just one transaction involving 76 grams of the controlled substance, which started his Guidelines calculation at a significantly lower Base Offense Level of 24. Plea Agreement [Dkt. # 16] at 2. And defendant Johnson had no criminal convictions that would count for Guidelines purposes. *See id.* at 3. Thus, Johnson fell within Criminal History Category I, which resulted in an advisory sentencing Guideline range of 30 to 37 months. Also, there were extraordinary personal circumstances in Johnson's case that warranted a departure under U.S.S.G. § 5H1.6. Given the significant differences in the charged conduct, the statutory sentences faced, and the Guidelines calculations, there was nothing counsel could have said that would have resulted in a sentence for Roberts that mirrored his co-defendant's.

## CONCLUSION

Because defendant's plea agreement bars him from collaterally attacking his sentence, and because defendant has not met his burden to show that his counsel's performance caused any prejudice, the Court will deny defendant's motion to vacate his sentence.

A separate order will issue.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: August 2, 2017